UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

THOMAS RODRIGUEZ,
TINA RODRIGUEZ,

                Plaintiffs,

v.                                       **DECISION AND ORDER**
                                              17-CV-251S

UNITED STATES OF AMERICA,

                Defendant.

## I. Introduction

This is a Federal Tort Claims Act, 28 U.S.C. § 1346 ("FTCA"), case involving a rear-end collision of a United States Postal Service van into the police patrol car driven by Plaintiff Thomas Rodriguez ("Thomas") (Docket No. 4, Compl.). Thomas initially alleged suffering injuries totaling $3 million (with his wife Tina Rodriguez claiming $1 million in consortium losses), for a total ad damnum of $4 million (id. ¶¶ 14, 19, WHEREFORE Cl.). Plaintiffs now move to increase the ad damnum to $7 million due to discovery of a concealed tear in Thomas' left shoulder and permanent disability designation (Docket No. 58).

For the reasons stated herein, Plaintiffs' Motion (id.) is denied. Thomas Rodriguez' damages are limited to the amounts alleged in the administrative claim and in the Complaint of $3 million and $1 million for Tina Rodriguez' loss of consortium for a total claim of only $4 million(Docket No. 4, Compl. ¶¶ 13-14). A status conference remains scheduled for December 22, 2021, 9 am (Docket No. 59, Minutes, Oct. 27, 2021).

## II.   Background

### A.  Factual Allegations

The fact of the February 25, 2016, collision of the USPS van and Thomas' police patrol car is not in dispute.  However, the circumstances, the source, and degree of Thomas' injuries from that collision are disputed.

#### 1.  Thomas Rodriguez' Collision and Initially Discovered Injuries

Plaintiffs moved for Partial Summary Judgment (Docket No. 41), which this Court granted in part (Docket No. 50); familiarity with that Decision and Order is presumed. They filed an administrative claim with the United States on August 16, 2016, for damages in the amount of $3 million for injuries sustained by Thomas to his neck, back, shoulder, and wrist from the collision and $1 million for the loss of consortium suffered by his wife, Tina (Docket No. 4, Compl. ¶¶ 13-14, 16-19; see Docket No. 58, Pls. Memo. at 2).  On March 22, 2017, Plaintiffs then filed the Complaint (Docket No. 4) in the case, seeking $4 million (id. ¶¶ 14, 19, WHEREFORE Cl.).

This Court previously summarized Thomas' treatment history since the collision in February 2016 through August 2017 (Docket No. 50, Decision & Order at 3-8).  In short, Thomas received regular treatment, physical therapy, and evaluation of his neck, back and shoulder before and following filing the administrative claim (Docket No. 44, Pls. Statement ¶¶ 66-93).  In August 2016, Thomas had left shoulder rotator cuff surgery (Docket No. 58, Pls. Memo. at 2).

After August 2016 and the administrative claim, Thomas had reductions in his range of motion (Docket No. 44, Pls. Statement ¶¶ 66, 69-70) and his doctors opined that

2

these symptoms were related to the February 2016 accident (id. ¶¶ 71, 75, 82, 91, 92). Further, the doctors concluded that Thomas had permanent disability from returning to work as a police detective (e.g., id. ¶¶ 90 (Dr. Frank Vigna, Oct. 9, 2018), 92; Docket No. 42, Pls. Atty. Decl. Ex. J, at 5-6, Ex. H, at 173 (Dr. Wind, Aug. 17, 2017)).

On June 12, 2017, Thomas had a left laminotomy and discectomy at L4-5 and L5-S1 (Docket No. 44, Pls. Statement ¶ 73; Docket No. 42, Pls. Atty. Decl. Ex. J, at 87-90). It was performed by Dr. Vigna, who opined that Thomas was permanently disabled from all duties as a police officer (Docket No. 58, Pls. Memo. at 7; Docket No. 58, Pls. Atty. Decl. ¶ 14, Ex. M; cf. id., ¶¶ 12-13, Exs. K, L, prior disability assessments by Drs. David Bagnall and Vigna).

On August 17, 2017, Dr. William Wind opined that there was a 40% schedule loss of use of Thomas' left shoulder and found that the injury was permanent and caused by the accident (Docket No. 44, Pls. Statement ¶ 77; Docket No. 42, Pls. Atty. Decl. Ex. H, at 173).

On October 19, 2017, Dr. Wind ordered a second MRI of the left shoulder and the follow up surgery on October 30, 2017 (id.; Docket No. 58, Pls. Atty. Decl. ¶ 4, Ex. C). The MRI revealed a concealed tear in the left shoulder.

Thomas stated he had not returned to work since the accident (Docket No. 44, Pls. Statement ¶ 94).

2. Plaintiffs' Motion to Increase the Ad Damnum (Docket No. 58)

On October 22, 2021, Plaintiffs filed their pending Motion seeking to increase the ad damnum to total $7 million (Docket No. 58[1]). They argue that the concealed tear is new evidence warranting amending the ad damnum because it was a material change in Thomas' diagnosis, discovered after they filed their claim (and this action) (Docket No. 58, Pls. Memo. at 6). They contend that tear was not visible when they filed their claim (id. at 2-3; see Docket No. 58, Pls. Atty. Decl. ¶ 5, Ex. D).

They further contend that Dr. Vigna's 2018 opinion (of totally disability rendered after the administrative claim) represented yet another material change in his diagnosis (Docket No. 58, Pls. Memo. at 7). They conclude that these changes warrant amending their damages to reflect the additional injury (see id.).

B. Proceedings

The Government answered on August 7, 2017 (Docket No. 8).

On May 1, 2019, Plaintiffs moved for partial summary judgment as to the Government's liability under New York tort and No-Fault insurance laws (Docket No. 41). This Court granted this Motion in part as to the Government's negligence and denied the Motion in part as to alleged serious injury categories under No-Fault Law (Docket No. 50). In so deciding, this Court acknowledged that the Government identified material issues of fact regarding proximate causation (id. at 29-30).

---

[1] In support of their Motion, Plaintiffs submitted their Attorney's Declaration with exhibits and their Memorandum of Law, Docket No. 58.
In opposition, the Government submits its attorney's Declaration with Exhibits and its opposing Memorandum of Law, Docket No. 60.
Plaintiffs did not reply.

This Court referred this case to mediation (see Docket Nos. 52, 53, 55), which did not resolve the case (Docket No. 55). Thereafter, at a status conference on October 27, 2021, this Court set briefing for the pending motion and scheduled a further status conference on December 22, 2021 (Docket No. 59). If necessary, trial will be scheduled in 2022 (see id.).

Plaintiffs next filed the pending Motion to Increase the Ad Damnum (Docket No. 58). The Government responded on November 10, 2021 (Docket No. 60). Plaintiffs did not reply. This Motion was deemed submitted without oral argument.

### III.   Discussion

A. Applicable Standards—Amending Damage Claims under Federal Tort Claims Act

A FTCA claim first must be presented to the appropriate federal agency before filing an action against the United States or one of its agencies, 28 U.S.C. § 2675(a); Malmberg v. United States, 816 F.3d 185, 196 (2d Cir. 2016) (Docket No. 60, Def. Memo. at 8). This action

> "shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim,"

28 U.S.C. § 2675(b). The purpose of this administrative claim process is to facilitate out of court settlement and provide notice to the United States or the relevant federal agency to settle tort claims, Low v. United States, 795 F.2d 466, 471 (5th Cir. 1986) (case quoted omitted) (id.).

As waiver of sovereign immunity, the FTCA "must be complied with strictly," O'Rourke v. Eastern Air Lines, Inc., 730 F.2d 842, 856 (2d Cir. 1984), abrogated on other grounds by Salve Regina Coll. v. Russell, 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991); Castelluccio v. United States, No. 1:17-CV-190, 2019 WL 7753277, at *4 (N.D.N.Y. Dec. 20, 2019). As observed by the Northern District of New York in Castelluccio,

> "To recover damages in excess of the amount set forth in the administrative claim, one of the two exceptions set forth in the statute must apply: 'the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency,' or there is 'proof of intervening facts, relating to the amount of the claim.' 28 U.S.C. § 2675(b). However, and critical to this case, changes in a medical diagnosis can, in the proper circumstances, satisfy the § 2675(b) exceptions."

Castelluccio, supra, 2019 WL 7753277, at *4 (Docket No. 58, Pls. Memo. at 4; see also Docket No. 60, Def. Memo. at 8-9). A motion to increase the ad damnum should be granted "when an unexpected change occurred either in the law or in a medical diagnosis," O'Rourke, supra, 730 F.2d at 856 (Docket No. 60, Def. Memo. at 9).

B. Parties' Contentions

Plaintiffs argue that Thomas' October 2017 MRI detected a concealed tear that revealed his condition was worse than when Plaintiffs filed their claim (Docket No. 58, Pls. Memo. at 4-8). Plaintiffs cite analogous cases where subsequent MRI or examinations revealed further injuries to claimants warranting increased ad damnum amounts (id. at 4-6, citing Castelluccio, supra, 2019 WL 7753277, at *4; Kenney v. United States, 298 F. Supp.2d 139, 144-45 (D. Me. 2003); Malmberg v. United States, 777 F. App'x 554, 559 (2d Cir. 2019); Michels v. United States, 31 F.3d 686, 688-89 (8th Cir.

6

1994)). They argue that the discovery of the concealed tear and Dr. Vigna's post-operative opinion of Thomas' disability are changed circumstances, discovered after the fact of filing the administrative claim, and warrant amending the ad damnum (id. at 6-8).

The Government opposes amending the ad damnum clause. It argues mere worsening of Thomas' condition does not justify amending the ad damnum clause (Docket No. 60, Def. Memo. at 10). Reviewing Thomas' medical record, the Government argues that Thomas' lumbar back surgery existed when Plaintiffs filed their administrative claim (id. at 2-7, 12-13). Next, the Government dismisses Thomas' claim of newly discovered permanent disability because that disability also existed when Plaintiffs filed their claim (id. at 13-15).

The Government argues Plaintiffs failed to prove discovery of the concealed tear was not foreseeable (id. at 15-16). Plaintiffs have not shown the concealed tear was causally related to the accident (id. at 16). In doing so, it points to a radiologist report which states that the tear "was not present previously" prior to the accident (id. at 16 n.1; Docket No. 60, Def. Atty. Decl. ¶ 4.q., Ex. Q (MRI report, Oct. 30, 2017)).

Plaintiffs also have not alleged a causal connection between the so-called newly discovered evidence and the increased damages amount (Docket No. 60, Def. Memo. at 17-20). Even if intervening facts were as alleged, the Government argues that Plaintiffs also need to establish that the claimed injuries support the increased FTCA award (id. at 18, citing Resnansky v. United States, No. 13CV5133, 2015 WL 198606, at *10 (N.D. Cal. May 1, 2015); Michels v. United States, 815 F. Supp. 1244, 1265-66 (S.D. Iowa 1993), aff'd, 31 F.3d 686 (8th Cir. 1994)). The Government contends the proposed ad damnum

7

increase is because Plaintiffs' economic expert revised his opinion by factoring in Thomas' loss of career advancement in his projected salary (id. at 19-20; Docket No. 60, Def. Atty. Decl. Exs. U (Plaintiffs' economic expert report), V (email from Plaintiffs' counsel to defense counsel)) rather than by factoring in the damages from the concealed tear and findings of disability.

### C. Increasing Claimed Damages

At issue is whether Plaintiffs may almost double the ad damnum by $3 million (to total $7 million) for alleged post-administrative claim changes in Thomas' condition. To do so, Plaintiffs need to show unexpected changed circumstances. There was no change in the law and Plaintiffs did not assert such a change.

#### 1. Lumbar Surgery and Disability Finding

This Court agrees with the Government (see Docket No. 60, Def. Memo. at 2-7, 12-13) that Plaintiffs' claimed changes due to Thomas' lumbar surgery and the permanence of Thomas' disability were known when they filed their administrative claim in August 2016 and set forth their proposed damages. These facts do not support amending the ad damnum.

Although Thomas had post-claim lumbar surgery in June 2017 (see Docket No. 58, Pls. Memo. at 4), Dr. Vigna recommended this surgery in July 2016 (Docket No. 60, Def. Memo. at 5) and the need for this surgery was confirmed by an independent medical examiner later that month (id.) before they filed their administrative claim. Thus, Plaintiffs could have included injuries to his back in calculating damages for the administrative claim.

8

Plaintiffs claim Thomas was not deemed <u>permanently</u> disabled when they filed their claim (Docket No. 58, Pls. Memo. at 4).  The prior medical opinions, however, found Thomas unable to return to his duties.  In May 2016, Dr. Michael Stoffman concluded that Thomas was 100% temporarily disabled (Docket No. 60, Def. Memo. at 3; Docket No. 60, Def. Atty. Decl. Ex. D, at 1048), without stating when Thomas could resume his duties. Then in June 2016, Dr. Michael Gerace found that Thomas could not return to work (Docket No. 60, Def. Memo. at 4; Docket No. 60, Def. Atty. Decl. Ex. H, at 1351). Dr. Vigna in July 2016 opined that Thomas could not perform the duties of his job as a police officer safely (Docket No. 60, Def. Memo. at 5; Docket No. 60, Def. Atty. Decl. Ex. K, at 882).  These findings predate the filed administrative claim and Plaintiffs could have included disability as part of the alleged damages and is not newly discovered.

This post-claim changed finding of temporary to permanent disability does not correspond with a $3 million increase in Thomas' damages.  Thomas' losses from his temporary (but long-term) disability later found to be permanent has not been quantified to justify nearly doubling his damages.

### 2. Concealed Tear in Thomas' Left Shoulder

The only possible newly discovered evidence is the concealed tear in Thomas' left shoulder.  Dr. Hari Gopal, in the October 2017 MRI report, noted the concealed tear but found that it "was not present previously" (Docket No. 60, Def. Atty. Decl. Ex. Q, at 620; Docket No. 60, Def. Memo. at 16 n.1).  It is unclear what caused this tear, although Dr. Wind found in August 2017 that Thomas had partial loss of the use of that shoulder attributable to the accident (Docket No. 44, Pls. Statement ¶ 77).  There is no finding

9

linking the concealed tear to the accident.  Plaintiffs have not alleged the concealed tear was caused by the accident.  The Government suggests the tear may have been caused by Thomas' other activities (see Docket No. 60, Def. Memo. at 16-17; Docket No. 60, Def. Atty. Decl. Ex. T).

If accepting the concealed tear as newly discovered evidence after the filing of the administrative claim, Plaintiffs do not state how the $3 million increase in claimed damages is attributable to the worsened condition of the shoulder.  They do not allege intervening facts relative to the amount of the claim, see 28 U.S.C. § 2675(b).  The only accounting that shows a $3 million increase in Thomas' damages is his economic expert's revised opinion factoring Thomas' projected promotions and wage increases over his professional career had he not been injured (Docket No. 60, Def. Memo. at 19; Docket No. 20, Def. Atty. Decl. Ex. U).  This has nothing to do with any additional injury he suffered from the concealed tear.  Plaintiffs fail to make a nexus between the concealed tear and the sought increase in damages (Docket No. 60, Def. Memo. at 18-19).  They "'may only recover to the extent that the increased amount is attributable to the newly discovered evidence or intervening facts,'" Highhouse v. United States, No. CV 14-140, 2017 WL 1187932, at *14 (W.D. Pa. Mar. 30, 2017) (quoting Resnansky v. United States, No. 13-cv-5133-DMR, 2015 WL 1968606, at *10 (N.D. Cal. May 1, 2015) (Docket No. 60, Def. Memo. at 17).  As observed by the Government (id. at 18-19 & n.2, citing New York cases), recent verdicts for torn rotator cuff injuries did not exceed $125,000, not the additional millions of dollars Plaintiffs now seek leave to assert.

In sum, Plaintiffs asserted new facts (Thomas' post-claim lumbar surgery, the amended disability designation, and the concealed tear in his left shoulder) fail to justify amending the ad damnum. Thus, Plaintiffs' Motion to Increase the Ad Damnum Clause (Docket No. 58) is denied.

## IV.     Conclusion

Plaintiffs claimed newly discovered facts either were known to them when they filed their administrative claim in August 2016 or were potentially novel but without alleging any relationship to the accident. Plaintiffs have not justified the proposed $3 million increase proposed due to the post-accident detected concealed shoulder tear or the later found permanence of Thomas' disability. Plaintiffs have not established newly discovered injuries to Thomas Rodriguez to warrant increasing their ad damnum.

Under the Federal Tort Claims Act, 28 U.S.C. § 2675(b), Plaintiffs can assert only the amount alleged in that claim, or $4 million for Plaintiffs' total damages. Therefore, Plaintiffs' Motion (Docket No. 58) to Amend the Ad Damnum Clause in the administrative claim is denied.

The Status Conference scheduled on Wednesday, December 22, 2021, at 11:00 a.m., remains as scheduled.

## V.     Orders

IT HEREBY IS ORDERED, that Plaintiffs' Motion to Amend the Ad Damnum Clause (Docket No. 58) is DENIED.

FURTHER, the Status Conference scheduled on Wednesday, December 22, 2021, at 11:00 a.m., remains as scheduled.

SO ORDERED.

Dated:	December 14, 2021
	Buffalo, New York

<u>s/William M. Skretny</u>
WILLIAM M. SKRETNY
United States District Judge